THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SYLVESTER ROSS, Defendant-Appellant.

Fourth District    No. 16896

Opinion filed September 30, 1981.

Daniel D. Yuhas and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Basil G. Greanias, State's Attorney, of Decatur (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE LONDRIGAN delivered the opinion of the court:

Defendant Sylvester Ross was convicted of armed robbery and was sentenced to a term of 7½ years' imprisonment. On appeal, defendant contends that, under the theory of accountability, the evidence presented at trial was insufficient to support the verdict of guilty beyond a reasonable doubt.

Sylvester Ross was charged with armed robbery in an information filed July 1, 1980. At trial, the following testimony was presented:

Tony Buzar and Keith Williams testified that at about 5 p.m. on June 25, 1980, they were at the Mini Bucket, a bait shop south of Decatur owned by Buzar's father. Buzar was working at the shop that day and Williams was visiting him. Both Buzar and Williams were behind the counter when two black men entered the shop. After browsing for a

while, one of the men pulled a pistol and shouted, "Get it out, get it out!" Buzar opened the cash register and the man without the gun took the money from the drawer. The men also took money from the wallets of Buzar and Williams and then left the shop. Williams went to the door and saw the men enter a tan four-door Oldsmobile Cutlass with a dented left front fender. The car did not have any license plates, but it did have a license sticker on the front windshield. Williams called the police.

Officer David Slade testified that he was dispatched to investigate the robbery. En route to the bait shop, Slade observed a car matching the description of the getaway vehicle; the car was occupied by three black men. Slade followed the car, but lost sight of the vehicle when it went the wrong way on a one-way street. Slade later found the Oldsmobile in the parking lot of the Masonic Temple.

About two blocks from where the car was found, Officer Slade arrested three black men, one of whom was the defendant. When Slade found the Oldsmobile in the parking lot, its engine was still warm. A paper bag and a butcher knife were lying on the floor. Slade could see, through a hole in the bag, what looked like a stock of a pistol.

Detectives Roger Shelton and Paul Johnson testified that, on July 15, 1980, they received a message from the jail that Ross wanted to talk. After informing Ross of his rights, the detectives took a recorded statement. The trial court admitted Ross' statement.

In the statement, Ross said that King and Harper, the other two suspects arrested, wanted him to drive them to rob a man named Ted Perkins. The men obtained a gun from the home of Harper's mother, but were unable to find Perkins. Either Harper or King said that since they could not find Perkins, they could "do something else." The three men drove to the Mini Bucket. Ross parked in front of the shop because he thought the others were going into the store to buy food and "check out" the store. Ross said that he did not know that Harper had taken the gun into the store. Harper and King ran back to the car and told Ross to leave. King then told Ross that he and Harper had robbed the store. When Ross saw two police cars following him, he turned down an alley and attempted to evade the police. The three men abandoned the car and fled on foot. They were arrested a short time later.

Defendant contends that this evidence, presented at trial, was not sufficient to support a verdict of guilty beyond a reasonable doubt. We disagree.

■■ There is no dispute that an armed robbery was committed. Nor is it disputed that defendant Ross drove the car used to flee the scene. If Ross knowingly drove a "getaway car," then he is legally responsible as a principal. (*People v. Richardson* (1971), 132 Ill. App. 2d 712, 270 N.E.2d 568.) The Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 1—1 *et seq.*) states that a person is legally accountable for the acts of another if:

"(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c).

Mere presence at the scene of the crime does not make defendant accountable for the acts of his companions; he must have known that a crime was being committed. (*People v. Tillman* (1971), 130 Ill. App. 2d 743, 265 N.E.2d 904.) However, proof of acts in aid of a common purpose to commit an offense can be shown by evidence of the circumstances surrounding the commission of the act. (*People v. Hill* (1968), 39 Ill. 2d 125, 233 N.E.2d 367; *Richardson*; *People v. Williams* (1968), 104 Ill. App. 2d 329, 244 N.E.2d 347.) "A person may aid or abet without actively participating in the overt act or acts and evidence that the accused attaches himself to a group bent on illegal acts with knowledge of its design supports an inference that he shared the common illegal purpose and will sustain his conviction as a principal for a crime committed by another in furtherance of the venture. [Citation.]" *People v. Littleton* (1969), 113 Ill. App. 2d 185, 189, 252 N.E.2d 77, 79.

In the case before us, defendant admits that he and his companions set out to rob Ted Perkins, but were unable to locate their intended victim. They then decided to "do something else." Ross drove to the Mini Bucket and waited while his friends were inside. Defendant admits driving from the scene and attempting to evade police. This evidence supports the inference that he shared the common illegal purpose of the group (see *Littleton*).

Defendant, in his recorded statement, said that he had no knowledge of the plans of King and Harper to rob the Mini Bucket. We do not consider this to be conclusive. Testimony by the defendant in a criminal case presents a question of credibility to be decided by the trier of fact. (*People v. Kradenych* (1980), 83 Ill. App. 3d 547, 404 N.E.2d 488; *People v. Glenn* (1975), 33 Ill. App. 3d 417, 337 N.E.2d 435.) A reviewing court will not set aside a jury verdict of guilty unless the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of guilt. *People v. Reese* (1973), 54 Ill. 2d 51, 294 N.E.2d 288; *People v. Fox* (1971), 48 Ill. 2d 239, 269 N.E.2d 720.

The judgment of the circuit court of Macon County is affirmed.

Affirmed.

TRAPP, P. J., and WEBBER, J., concur.